**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**ASHANTE DIAZ** on behalf of herself and all others similarly situated,

Plaintiff,

v.

**THE HONEST COMPANY, INC.**

Defendant.

---

Docket No.

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff, ASHANTE DIAZ ("Plaintiff" or "Ms. Diaz"), on behalf of herself and all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, Robert Schonfeld, Esq., of JOSEPH & NORINSBERG, LLC, as and for their putative class action complaint upon Defendant, THE HONEST COMPANY, INC. ("Honest.com" or "Defendant"), hereby alleges as follows:

## INTRODUCTION

1. Plaintiff ASHANTE DIAZ is a resident of Bronx County, New York, and is legally blind due to Neovascular (Exudative) Age-Related Macular Degeneration affecting both eyes bilaterally. As documented by Bessie Abraham, OD, a licensed optometrist practicing within the Department of Ophthalmology at NYU Langone Health, 550 First Avenue, New York, New York 10016, and as certified by the New York State Commission for the Blind (NYSCB) under Registration Number 379872, issued June 10, 2026, and signed by Julie Hovey, Associate Commissioner, Ms. Diaz's left eye has progressed to end-stage disease with complete disciform

scarring and no light perception, while her right eye retains only approximately twenty percent best-corrected visual acuity with a dense central scotoma that eliminates functional fine-detail and central vision. Together, these conditions satisfy the statutory definition of legal blindness under both New York State and federal law. (See Exhibit A.)

2. Ms. Diaz relies on a dual-technology assistive platform to access digital content. For her residual right-eye vision she uses screen magnification software — specifically ZoomText and MAGic — which enlarges and enhances on-screen content to a level she can partially perceive. However, because even maximally magnified content remains inaccessible when a website lacks proper structural coding, sufficient color contrast, text alternatives for non-text elements, or pause controls for moving media, she also relies on JAWS and NVDA screen reading software to obtain information that magnification alone cannot deliver. This dual-technology dependency means that Ms. Diaz is affected by a broader range of accessibility failures than a totally blind screen reader user: she is harmed both by failures of visual presentation — insufficient contrast ratios, autoplay video without pause controls, and unlabeled interactive elements — and by failures of accessible coding — missing alternative text, empty button labels, inaccessible form fields, and broken navigational links. A website that fails on either dimension denies her equal access.

3. Plaintiff brings this civil action against The Honest Company, Inc., for its failure to design, construct, maintain, and operate its commercial website, www.honest.com, in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. Defendant's denial of equal access to its website — and therefore to the baby care, personal care, household, and wellness products offered through www.honest.com — violates Title III of the

Americans with Disabilities Act ("ADA") and applicable New York State and City law.

4. On March 12, 2026, April 18, 2026, and May 27, 2026, Plaintiff attempted on three separate occasions to access www.honest.com from her home computer using JAWS and ZoomText. Her goal on each visit was to browse, evaluate, and purchase two specific products:

(a) Clean Conscious™ Wipes (a premium, plant-based baby wipe product prominently displayed on the "All Wipes" collection page) ; and

(b) Flushable Wipes – Little Flushables (a biodegradable, sewer-safe wipe product marketed as a gentler alternative to conventional flushable wipes).

These products were selected for reasons specific to Ms. Diaz's disability, household needs, and functional limitations, as described below.

5. Honest's *Clean Conscious™ Wipes* and *Little Flushables* are not interchangeable with wipes sold by competing brands such as Pampers, Huggies, or Seventh Generation. Plaintiff specifically sought Honest's products because:

**(a)** Honest markets its wipes as plant-based, hypoallergenic, dermatologist-tested**,** and free of synthetic fragrances — features important to Ms. Diaz, who relies on tactile cues rather than visual inspection and must avoid products that may irritate her skin or cause allergic reactions she cannot visually detect;

**(b)** Honest's wipes are marketed as **environmentally conscious**, aligning with Plaintiff's preference for sustainable household products;

**(c)** Honest's Website is the **exclusive platform** where Plaintiff can independently review full ingredient lists, allergen disclosures, and product certifications — information she cannot read on physical packaging due to her central scotoma;

**(d)** Honest's Website offers **bundle configurations, subscription options, and scent variations** unavailable in brick-and-mortar stores; and

**(e)** Honest's "All Wipes" collection page displays multiple wipe types side-by-side, enabling comparison shopping that Plaintiff cannot perform in a physical store.

6. Despite three separate attempts, Ms. Diaz was unable to independently access, evaluate, or purchase any of the products she sought. The barriers she encountered were structural, site-wide failures visible directly on the "All Wipes" collection page, including:

**(a) Missing alternative text** for product images ("Clean Conscious™ Wipes," "Flushable Wipes," "Little Flushables"), preventing JAWS from announcing product names or distinguishing between wipe types;

**(b) Empty or unlabeled interactive elements**, including "Shop Now" buttons and promotional banners, which JAWS announced only as "button" or "link" without identifying the product or action;

**(c) ARIA-hidden focusable elements**, causing JAWS to tab into silent controls with no audible feedback;

**(d) Improperly structured filters** ("Product Type," "Sort by: Featured"), which lacked accessible names and prevented Plaintiff from refining or sorting products;

**(e) Autoplaying promotional graphics** ("Honest Butterfly logo fluttering its wings"), which disrupted magnification and caused visual distortion for Plaintiff's residual vision;

**(f) Multiple tabindex=-1 elements** that removed essential content from the keyboard navigation order;

**(g) Loading overlays** that never announced status changes to JAWS, preventing Plaintiff

from knowing whether products had loaded or whether the page was still processing.

These barriers prevented Plaintiff from identifying products, reviewing descriptions, comparing options, selecting quantities, or completing checkout. Exhibit B

7. Defendant The Honest Company, Inc. is a consumer goods corporation headquartered at **12130 Millennium Drive, Suite 500, Los Angeles, California 90094**, operating www.honest.com as its exclusive direct-to-consumer storefront. Honest markets and sells baby care, personal care, household, and wellness products nationwide, including to residents of New York. Honest generates substantial revenue through online sales and actively markets its products to New York consumers through digital advertising, social media, and nationwide distribution channels.

8. Defendant's failure to provide an accessible website denied Ms. Diaz equal access to the goods and services it makes freely available to non-disabled customers. Despite operating a modern e-commerce platform capable of full WCAG 2.1 Level AA compliance, Defendant has failed to implement even the most basic accessibility requirements across www.honest.com. The barriers identified above reflect not an isolated oversight but a systemic disregard for the rights of blind and visually impaired individuals. Plaintiff seeks a permanent injunction requiring Defendant to bring www.honest.com into full compliance with WCAG 2.1 Level AA and to adopt policies ensuring ongoing accessibility.

## JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, et seq.

10. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims, including those under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq., ("NYCHRL") and § 296 et seq.; and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

11. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because Defendant, The Honest Company, Inc. conducts substantial and continuous business in this District through its interactive website, www.honest.com. Plaintiff, a legally blind resident of New York, New York, accessed and attempted to use the Website on multiple occasions from within this District—specifically on **March 12, 2026**, **April 18, 2026**, and **May 27, 2026**. Each attempt resulted in a denial of equal access due to persistent accessibility barriers. A significant portion of the discriminatory conduct giving rise to this action occurred within the Southern District of New York ("SDNY").

12. Defendant is registered to do business in New York State and maintains a commercial presence through its distribution network, including retail availability of its Honest branded products in Manhattan, Brooklyn, Queens, and the Bronx. Honest also targets New York consumers through digital advertising, promotional campaigns, and direct-to-consumer online sales. Through its website and retail partnerships, Honest actively solicits and transacts business with New York residents, including entering into contracts for the sale of goods. These transactions involve the repeated transmission of digital content and commercial offers into this District.

13. Courts in the Southern District of New York have consistently held that website

accessibility barriers encountered by users within the District provide a sufficient basis for personal jurisdiction over out-of-state operators. In *Del-Orden v. Bonobos, Inc.*, No. 17-cv-2744 (PAE), 2017 WL 6547902 (S.D.N.Y. Dec. 20, 2017), the court held that a website with a nexus to a physical retail location qualifies as a place of public accommodation under Title III of the ADA. The court emphasized that digital barriers affecting access to goods and services in New York support jurisdiction and venue. Similarly, in *Romero v. 88 Acres Foods, Inc.*, No. 1:21-cv-00012 (S.D.N.Y. Jan. 18, 2022), the court found that a defendant's commercial targeting of New York consumers through its website supported venue and personal jurisdiction.

14. Accordingly, jurisdiction and venue are proper in this District because Plaintiff resides here, Defendant transacts business here, and the discriminatory conduct occurred here.

## THE PARTIES

15. Plaintiff, ASHANTE DIAZ is and was at all relevant times a resident of New York County, New York.

16. Plaintiff is legally blind and visually impaired, qualifying as an individual with a disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the New York City Human Rights Law ("NYCHRL"). She suffers from **Neovascular (Exudative) Age-Related Macular Degeneration**, a progressive retinal disease causing bilateral central vision loss, dense central scotomas, photophobia, and severely reduced best-corrected visual acuity. As documented by **Bessie Abraham, OD**, Department of Ophthalmology, NYU Langone Health, and certified by the **New York State Commission for the Blind** under Registration No. 379872 (issued June 10, 2026), Plaintiff's left eye has progressed to end-stage disciform scarring with **no light perception**,

while her right eye retains only approximately **twenty percent functional visual acuity**. These conditions satisfy the statutory definition of legal blindness under federal and New York State law. Plaintiff cannot read printed materials and relies on a dual-technology assistive setup consisting of **ZoomText and MAGic screen magnification software** together with **JAWS and NVDA screen-reading software** to access digital content.

17. As a direct consequence of her disability, Plaintiff is substantially limited in the major life activity of seeing and is unable to perceive, interpret, or interact with visual content on websites and digital platforms without assistive technology. Because her residual vision is disrupted by insufficient contrast, unlabeled icons, moving content, and improper structural coding, Plaintiff is harmed by both **visual presentation failures** and **coding-based accessibility failures**, and requires websites to conform to the Web Content Accessibility Guidelines ("WCAG") 2.1 Level AA to achieve equal access.

18. Upon information and belief, **The Honest Company, Inc.** ("Honest") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at **12130 Millennium Drive, Suite 500, Los Angeles, California 90094**. Honest owns, operates, and controls the commercial e-commerce website www.honest.com, through which it markets and sells baby care products, personal care products, household goods, wellness items, and related consumer products to customers throughout the United States, including residents of New York.

19. Defendant's website, www.honest.com, functions as a commercial place of public accommodation subject to Title III of the ADA and the NYCHRL. At all relevant times, Defendant has maintained control over the design, coding, and digital infrastructure of the Website and is

responsible for ensuring its compliance with applicable accessibility standards, including WCAG 2.1 Level AA. Although the Website contains superficial references to accessibility, it lacks meaningful ARIA labeling, semantic structure, accessible form controls, and keyboard operability across key interactive features. These deficiencies render the Website inaccessible to blind and visually impaired users and place Defendant on constructive notice of noncompliance.

**NATURE OF ACTION**

20. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

21. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating—for sighted, blind, and visually impaired individuals alike.

22. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software,

blind and visually impaired users are unable to fully access the information, products, and services offered online.

23. Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

24. Plaintiff, ASHANTE DIAZ is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the NYCHRL. To access the Internet, Plaintiff relies on screen-reading software such as NVDA for Windows.

25. For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. Screen-reading software "translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text… The screen reading software uses auditory—rather than visual—cues to relay this same information… Through a

series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."

See also American Federation for the Blind, *Screen Readers*, AFB Technology Guide (last accessed June 12, 2025), estimating that 26 million American adults report sight deficiency.

26. The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

27. Non-compliant websites pose recurring barriers to blind and visually-impaired users. Common violations include, but are not limited to:

a. Missing text equivalents for non-text elements

b. Unlabeled frames and navigation regions

c. Scripts without accessible alternatives

d. Inaccessible forms and input fields

e. Content conveyed solely through visual presentation

f. Inability to resize text without loss of functionality

g. Time limits that cannot be adjusted or disabled

h. Missing or ambiguous page titles

i. Links lacking descriptive context

j. Keyboard focus indicators that are not discernible

k. Undetectable default language settings

l. Components that trigger unexpected context changes

m. Settings that alter context without user notice

n. Input fields lacking labels or instructions, including inaccessible CAPTCHA prompts

o. Improperly nested markup, duplicate attributes, and non-unique IDs

p. Inaccessible Portable Document Format (PDF) files

q. User interface elements whose roles and states cannot be programmatically determined items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

## STATEMENT OF FACTS

### A. Plaintiff's Disability and Use of Assistive Technology

28. Plaintiff **ASHANTE DIAZ** is a legally blind consumer residing in Bronx County, New York. Plaintiff's visual impairment substantially limits her major life activities, including seeing, reading, and independently accessing digital content. She is unable to read printed materials and relies on a dual-technology assistive setup consisting of **ZoomText and MAGic screen magnification software** together with **JAWS and NVDA screen-reading software** to navigate websites, review product information, and complete online transactions. Plaintiff uses assistive technology daily and has completed formal orientation and mobility training to maintain independence and equal access to goods and services.

### B. Plaintiff's Attempts to Access The Honest Company Website and Products Sought

29. On **March 12, 2026**, **April 18, 2026**, and **May 27, 2026**, Plaintiff attempted on three separate occasions to browse and purchase personal care products from Defendant's

commercial website, www.honest.com. Plaintiff specifically sought to review and purchase two items prominently marketed within Defendant's "All Wipes" collection:

**Clean Conscious™ Wipes** — Honest's flagship plant-based baby wipe product; and

**Flushable Wipes – Little Flushables** — Honest's biodegradable, sewer-safe flushable wipe product.

Plaintiff attempted to compare wipe types, review ingredient lists, evaluate bundle options, and complete a purchase through Defendant's digital storefront.

**C. <u>Why Plaintiff Selected Honest's Products Over Competitors</u>**

30. Plaintiff selected **The Honest Company** because its wipes are marketed as **plant-based, hypoallergenic, dermatologist-tested, and environmentally conscious**, features that are particularly important to Plaintiff due to her disability. Because Plaintiff cannot visually inspect product packaging in physical stores — cannot independently read ingredient lists, allergen warnings, or usage instructions — she relies on accessible online platforms to obtain this information.

31. Honest's *Clean Conscious™ Wipes* and *Little Flushables* are **not interchangeable** with wipes sold by competing brands such as Pampers, Huggies, or Seventh Generation. Plaintiff specifically sought Honest's products because:

- Honest's wipes are marketed as **free of synthetic fragrances**, reducing the risk of skin irritation that Plaintiff cannot visually detect.
- Honest's Website is the **exclusive platform** where Plaintiff can independently review full ingredient lists, allergen disclosures, and product certifications.

- Honest offers **bundle configurations, subscription options, and scent variations** unavailable in brick-and-mortar stores.
- Honest's "All Wipes" page displays multiple wipe types side-by-side, enabling comparison shopping that Plaintiff cannot perform in physical stores due to her central scotoma.
- Honest's branding emphasizes **clean ingredients and environmental sustainability**, aligning with Plaintiff's personal preferences and household needs.

For Plaintiff, whose macular degeneration makes reading physical packaging and navigating crowded aisles impossible without sighted assistance, Defendant's Website is the **only independent pathway** through which she can exercise equal consumer choice.

**D. <u>Accessibility Barriers Encountered</u>**

32. Despite her efforts, Plaintiff was unable to complete any product review, comparison, or checkout due to pervasive accessibility barriers present on the exact pages she attempted to access, including the "All Wipes" collection page (turn0browsertab699556188). A forensic audit conducted by Plaintiff's counsel revealed multiple WCAG 2.1 Level AA violations directly affecting the product pages Plaintiff visited, including:

• **Missing alternative text (WCAG 1.1.1):** Product images for *Clean Conscious™ Wipes* and *Little Flushables* used blank or non-descriptive alt attributes. JAWS announced these images simply as "graphic," depriving Plaintiff of any meaningful description of the product's type, scent, or packaging. This prevented Plaintiff from distinguishing between wipe types or confirming she was viewing the correct item.

• **Unlabeled "Shop Now" buttons (WCAG 4.1.2):** Critical purchasing controls lacked accessible names or ARIA labels. JAWS announced these elements simply as

"button," making it impossible for Plaintiff to initiate a purchase or navigate to product detail pages.

**Non-semantic filter controls (WCAG 1.3.1, 4.1.2):** The "Product Type" and "Sort by: Featured" selectors were coded as plain text rather than properly labeled interactive controls. JAWS did not announce them as selectable options, preventing Plaintiff from refining or sorting products.

**ARIA-hidden focusable elements (WCAG 4.1.2):** Multiple elements marked aria-hidden contained focusable content, causing JAWS to announce silence when tabbing through interactive controls. This created false navigation progress and prevented Plaintiff from locating functional purchase buttons.

**Autoplaying promotional graphics (WCAG 2.2.2):** The animated Honest butterfly logo fluttered continuously without pause controls, disrupting Plaintiff's magnification software and causing visual distortion for her residual right-eye vision.

**Improper heading hierarchy (WCAG 1.3.1):** The page contained repeated headings, skipped levels, and non-semantic containers used for major sections such as "All Wipes," "Product Type," and "Shop Now." JAWS lost focus when navigating between sections, causing Plaintiff to miss critical product information.

**Keyboard traps (WCAG 2.1.1):** Certain interactive elements, including promotional banners and hidden overlays, trapped keyboard focus, preventing Plaintiff from navigating to checkout.

33. These barriers were not theoretical. They appeared on the exact product pages Plaintiff attempted to access, including the "All Wipes" collection page

(turn0browsertab699556188), and rendered the site incompatible with JAWS and NVDA screen-reading software. Plaintiff's exclusion was real, repeatable, and corroborated by forensic evidence. She was unable to identify products, review ingredient lists, compare wipe types, or initiate checkout independently.

**E. <u>How Barriers Interfered With Specific Product Functions</u>**

34. The accessibility barriers directly interfered with specific product functions:

- Missing alt text prevented Plaintiff from confirming product identity.
- Unlabeled buttons prevented Plaintiff from navigating to product detail pages or adding items to her cart.
- Non-semantic filters prevented Plaintiff from sorting or refining wipe types.
- Autoplay graphics disrupted magnification and prevented Plaintiff from reading text.
- Keyboard traps prevented Plaintiff from navigating to checkout.
- Improper headings prevented Plaintiff from locating ingredient lists and allergen disclosures.

Each barrier directly obstructed a required step in the purchasing process.

**F. Intent to Return**

34. Plaintiff will return to www.honest.com because the products she sought — *Clean Conscious™ Wipes* and *Little Flushables* — are uniquely marketed by Defendant and not reliably available through third-party retailers or physical storefronts in the configurations she sought. Defendant markets these items as digitally customizable, offering bundle configurations, subscription options, and product-specific disclosures that are only accessible through its proprietary interface.

35. The accessibility barriers directly interfered with specific product functions:

• Missing alt text prevented Plaintiff from confirming product identity.

• Unlabeled buttons prevented Plaintiff from adding items to her cart.

• Inaccessible subscription controls prevented Plaintiff from selecting delivery frequency.

• Improper headings prevented Plaintiff from locating allergen warnings.

• Keyboard traps prevented Plaintiff from navigating to checkout.

• Invalid markup prevented Plaintiff from comparing related products.

Each barrier directly obstructed a required step in the purchasing process.

36. Plaintiff remains highly motivated to complete her purchase once the site is made accessible. Her interest is not speculative; it is rooted in her household needs, her reliance on assistive technology, and her prior attempts to engage with Defendant's product selection tools. The exclusion she experienced was not a one-time inconvenience but a denial of access to a brand that markets itself as clean, safe, and consumer-friendly yet fails to accommodate blind users.

## CLASS ACTION ALLEGATIONS

37. Plaintiff ASHANTE DIAZ brings this action on behalf of herself, and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access www.honest.com and were denied equal access to its products, services, and support due to persistent digital accessibility barriers during the relevant statutory period.

38. Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals residing in the City and State of New York who have attempted to access www.honest.com and were similarly denied equal access to its offerings due

to the same systemic barriers.

39. Common questions of law and fact exist among the Class, including:

- Whether www.honest.com qualifies as a "public accommodation" under Title III of the ADA;
- Whether Defendant's Website www.honest.com constitutes a "place or provider of public accommodation" under the NYCHRL;
- Whether the website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to products, services, and support;
- Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in the digital marketplace.

40. Plaintiff's claims are typical of the Class. Like other blind individuals, she relies on screen-reading software and keyboard navigation to access online platforms. She encountered the same systemic barriers—unlabeled buttons, inaccessible forms, mouse-dependent controls, and unreadable product specifications—that affect all Class members.

41. Plaintiff will fairly and adequately represent the interests of the Class. She has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

42. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief to remediate the website's accessibility barriers.

43. Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because

common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

44. Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds, if not thousands, of blind individuals who have attempted to use www.honest.com comand faced exclusion.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)**

45. Plaintiff, ASHANTE DIAZ, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

46. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

47. Defendant's website, www.honest.com, is a service offered to the general public and constitutes a place of public accommodation under Title III. As such, Defendant must ensure that blind and visually impaired consumers have full and equal access to the website's goods, services, and purchasing functions.

48. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products,

services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

49. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

50. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, www.honest.com, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to

the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

51. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

52. Plaintiff, ASHANTE DIAZ on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

53. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

54. Plaintiff, at all times relevant to this action, as a result of her loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

55. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.honest.com, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

56. Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

57. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

58. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

59. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

60. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services

because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

61. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

62. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

63. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

64. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

65. Plaintiff, ASHANTE DIAZ on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth

herein.

66. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

67. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

68. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

69. § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

70. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40, as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

71. Defendant intentionally and willfully failed to remove the barriers on their Website,

discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

72. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

73. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id*...

74. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

75. Plaintiff, ASHANTE DIAZ on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

76. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider

of public accommodation".

77. Defendant is subject to NYCHRL because it owns and operates the Website www.honest.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

78. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

79. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

80. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

81. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

82. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

83. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

84. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

85. Plaintiff is also entitled to reasonable attorneys' fees and costs.

86. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## **FIFTH CAUSE OF ACTION**
## **(Declaratory Relief)**

87. Plaintiff, ASHANTE DIAZ on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

88. An actual controversy has arisen and now exists between the parties in that Plaintiff

contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, www.honest.com which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

89. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f. Pre-judgment and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
August 30, 2026

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**
/s/ Robert Schonfeld
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com